# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| Minute Med Clinic Group, LLC | Civil Action No. 6:17-CV-0025 |
| versus | Judge Rebecca F. Doherty |
| Absolute MD, LLC, et al. | Magistrate Judge Carol B. Whitehurst |

## REPORT AND RECOMMENDATION

Pending before the Court are: (1) a Motion to Dismiss for Lack of Jurisdiction or, Alternatively, Motion to Compel Arbitration and Motion to Stay Proceedings (Doc. 5), filed by Defendants Absolute MD, LLC ("Absolute MD") and John Dailey (collectively "Defendants); (2) a Memorandum in Opposition, filed by Plaintiff Minute Med Clinic Group, LLC ("Minute Med") (Doc. 9); and (3) Defendants' Reply (Doc. 12). For the following reasons, the undersigned recommends that Defendants' motion to dismiss be **DENIED**, and that their motions to compel arbitration and stay these proceedings be **GRANTED**.

## *I. Background*

Minute Med is the management company for three separately owned urgent care clinics in Lafayette, Louisiana. (Doc. 1-2 at ¶ 5.) In the spring of 2016, Minute Med sought "to streamline its system for maintaining electronic health records and simplify the medical billing process for the Minute Med clinics, so that it would be less burdensome on the staff at each" location. (Doc. 1-2 at ¶ 7.)

In May of 2016, Minute Med and Dailey began discussions regarding a business arrangement "in which Absolute MD would provide to Minute Med a complete electronic record keeping system for patient information, claims review and processing, and claims management to Absolute MD." (Doc. 1-2 at ¶ 15.) Before entering into a contract, Minute Med received numerous representations from Absolute MD, including the following:

(1) Absolute MD owned a clearinghouse for processing medical claims as well as a company that processed laboratory work (Doc. 1-2 at ¶¶ 16, 17);

(2) Absolute had its own pharmacy service (Doc. 1-2 at ¶ 18);

(3) Absolute MD's services would allow Minute Med to simplify management of its medical practice giving it more time to expands its business (Doc. 1-2 at ¶ 20);

(4) Dailey assured Minute Med that "it had the capability to take over Minute Med's billing and claims management immediately upon signing a contract" (Doc. 1-2 at ¶ 23.)

(5) a brochure promised that Minute Med would have "24/7 access to its own data from any computer with an internet connection" (Doc. 1-2 at ¶ 26);

(6) Dailey claimed that "Absolute MD executives had a combined 40 years of experience in medicine, and over 20 years of medical practice consulting and billing," that the head of Absolute MD's billing department had many years of experience . . . with billing coding and billing management," that Absolute MD had a network of over 1,500 specialized offices, and that Absolute did

2

business nationwide in all 50 states as well as Puerto Rico (Doc. 1-2 at ¶¶ 28-32);

(7) Dailey "promised that Absolute MD would [] review the existing credentialing of Minute Med providers with all of the larger insurance companies, and to apply for credentialing for any of the providers who were not credentialed with those insurance companies (Doc. 1-2 at ¶ 50);

(8) Dailey "promised that Absolute MD had the capability and staffing to process Minute Med's insurance claims quickly" (Doc. 1-2 at ¶ 59);

(9) Dailey further "assured Minute Med that Absolute ND's clearinghouse would 'scrub' Minute Med's charts, reviewing al of Minute Med's insurance claims submissions before they were submitted to an insurance company for reimbursement, so that corrections could be made by Minute Med's medical providers to ensure low rejection rates and faster reimbursement rates" (Doc. 1-2 at ¶ 83);

(10) Absolute MD represented that its "chart and coding review process would reduce the number of claims that Minute Med had to correct after rejection by an insurance company," that "most of Absolute MD's claims are paid on first submission," and that "it had one of the lowest rejection rates in the country among billing companies" (Doc. 1-2 at ¶ 90.)

(11) Dailey assured Minute Med that Absolute MD would train all members of Minute Med in a timely, thorough, and proper fashion despite the fact Minute Med had many employees working shifts at the three clinics (Doc. 1-2 at ¶¶ 106-107);

(12) Dailey "represented that Absolute MD had a Managed Service Organization that would handle laboratory testing of toxicology, blood, and other common laboratory tests" (Doc. 1-2 at ¶ 125); and

3

(13) Absolute MD "represented that it owned a pharmacy program that would allow Minute Med to distribute medications in its clinics" (Doc. 1-2 at ¶ 134).

In July 2016, Minute Med and Absolute MD entered into a commercial agreement, titled Service Agreement ("Contract"), in which Absolute MD contracted to provide work related to billing records and billing systems for Minute Med. (Doc. 1 at p. 20). Specifically, the Contract obligated Absolute MD to: (1) "coordinate with [Minute Med] to obtain all documentation necessary to provide the services listed in Addendum A;" (2) "make its best efforts to process and transmit claims within one business day of receipt and [] furnish [Minute Med] a computer-generated report, verifying transmission of claims;" (3) charge Minute Med for services rendered at the agreed-upon rate; and (4) "uphold the highest standards of business ethics and will make its best effort to maintain compliance with State, Federal and private regulations and guidelines with respect to third-party billing services." (Doc. 1-2 at p. 20.)

Addendum A to the Contract further required that Absolute MD "would provide to Minute Med a system for maintaining electronic health records, a web-based claims processing and practice management systems, lab services, and pharmacy services. (Doc. 1-2 at 23-24.) Minute Med alleges that it paid Absolute MD in excess of $31,820 in set up fees and training costs as well as an $1,800

4

payment to pay for services rendered in August of 2016. (Doc. 1-2 at ¶ 144.) The Contract contains the following "Dispute Resolution" provision:

> In the event that litigation is instituted between the parties in connection with this agreement, the judgement thereof shall include a reasonable sum to be paid to the prevailing party for and on account of attorney's fees and costs incurred in such litigations. **AT [Absolute MD's] option, any dispute under this agreement shall either be submitted to binding arbitration in the city of Las Vegas, NV, under the rules of the American Arbitration Association, or filed in the appropriate court of law, to which [Minute Med] submits jurisdiction.**

(Doc. 1-2 at p. 22 (emphasis supplied.)

Minute Med filed a Petition for Rescission of Contract in the Fifteenth Judicial District Court, Parish of Lafayette, Louisiana. (Doc. 1-2.) Defendants subsequently removed the petition to this Court based on diversity jurisdiction. (Doc. 1.) Minute Med asserts that Absolute MD induced Minute Med to enter into the Contract through fraud, misrepresentations, and deception. (Doc. 1-2 at ¶¶ 140-46.) Minute Med cites Absolute MD's various misrepresentations about its experience, capabilities, and the nature of its equipment and services it would provide to Minute Med. (Doc. 1-2 at ¶ 140.) According to Minute Med, "[t]he misrepresentations and suppressions of the truth by [Defendants] were designed to induce Minute Med to sign the Contract and pay Absolute MD for services that it was not capable of providing, and had no intention of providing except through subcontractors." (Doc. 1-2 at ¶ 142.)

5

Minute Med further claims that Defendants' conduct violates the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. 51:1401, *et seq.*. (Doc. 1-2 at ¶¶ 147-150.) Minute Med seeks rescission of the Contract, damages in the amount of $33,620, and treble damages under the LUTPA. (Doc. 1-2 at ¶¶ 146).

## II. *Defendants Motions*

Defendants have filed a Motion to Dismiss for Lack of Jurisdiction or, Alternatively, Motion to Compel Arbitration Motion and Motion to Stay Proceedings. (Doc. 5). Defendants assert that, under the Dispute Resolution clause in the Contract, Absolute MD retains the right to submit this matter to binding arbitration. (Doc. 5-1 at p. 4.) They contend that the Federal Arbitration Act ("FAA") governs this matter because there are no legal constraints external to the parties' Contract foreclosing enforcement of the arbitration clause and that the dispute between the parties falls within the scope of the Contract. (Doc. 5-1 at p. 5.) Because the Court lacks subject matter jurisdiction over this matter due to the binding arbitration clause, Defendants contend that the Court should dismiss this action. (Doc. 5-1 at pp. 5-6.) Alternatively, Defendants argue that the Court should compel arbitration and stay this action. (Doc. 5-1 at pp. 6-7.)

In its response, Minute Med acknowledges that the FAA governs the validity of the arbitration provision at issue. (Doc. 9 at pp. 3-4.) Minute Med contends,

however, that its fraudulent inducement claim seeking rescission of the Contract and LUTPA claim do not fall within the scope of the narrow arbitration clause. (Doc. 9 at 4-8.) Specifically, Minute Med contends that the dispute does not arise "under the agreement" because the actions alleged in the petition occurred before the Contract was signed. (Doc. 9 at p. 6, 8.) Should the motion to compel arbitration be granted, Minute Med urges the Court to stay the litigation rather than dismiss it. (Doc. 9 at pp 9-10.)

In reply, Defendants contends that Plaintiff's claims are in reality contract claims disguised as tort claims. (Doc. 12 at p. 2.) Defendants cite the well-settled position that any doubts as to whether a dispute is covered by the scope of an arbitration agreement should be resolved in favor of arbitration. (Doc. 12 at p. 3.) Because Minute Med's claims sounding in tort are intertwined with the provisions of the Contract, Defendants urge the Court to construe the claims as based in contract and subject to arbitration under the arbitration clause. (Doc. 12 at pp. 4-5.)

### III. *Discussion*

#### A. *Motion to Compel Arbitration*

Federal courts determine whether a controversy is arbitrable under a contract upon examination of the contractual terms. *Associated Builders Corp. v. Ratcliffe Construction Co.*, 823 F.2d 904, 905 (5th Cir.1987). The parties do not dispute that

the FAA, which applies to contracts "evidencing a transaction involving interstate commerce," governs the determination in this case. *See* 9 U.S.C. §§ 1–16. "The FAA expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Insurance Co. v. Brown*, 304 F.3d 469, 471 (5th Cir.2002). In *Primerica*, the Fifth Circuit Court of Appeals explained that:

> Courts perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute. First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable. When conducting this two-pronged analysis, courts must not consider the merits of the underlying action. Under § 4 of the FAA, the federal district court ascertains only whether the arbitration clause covers the allegations at issue. If the dispute is within the scope of the arbitration clause, the court may not delve further into the merits of the dispute.

*Id.* (citations and internal quotations omitted).

Following the roadmap outlined in *Primerica*, the Court must first determine "whether there was a valid agreement to arbitrate and whether the dispute in question falls within the scope of the arbitration clause." *84 Lumber Co. v. F.H. Paschen, S.N. Nielsen & Assoc., LLC, et al.*, No. 12-1748, 2013 WL 3872217, at *2 (E. D. La. Jul. 24, 2013) (citing *Fleetwood Enterprises., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). The FAA provides in pertinent part that "a written provision in . . . a

8

contract . . . to settle by arbitration a controversy thereafter arising out such contract or transaction, or the refusal to perform the whole or an part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

### *1. Is the Contract's Arbitration Clause Valid?*

The arbitration clause in the Contract provides that, at Absolute MD's option, any dispute under this agreement shall either be submitted to binding arbitration or to the appropriate federal court. (Doc. 1-2 at p. 22.) The parties do not dispute the validity of the arbitration clause. Accordingly, the undersigned finds that a valid agreement to arbitrate exists in connection with this action.

### *2. What is the Scope of the Arbitration Clause?*

The parties primarily focus on the scope of the arbitration clause contained in the Contract and whether Minute Med's claim for fraud in the inducement of the Contract falls within the reach of that clause. When determining the scope of an arbitration provision, the Fifth Circuit generally has distinguished between broad and narrow arbitration clauses. *Ryan v. Thunder Restorations, Inc.*, No. 09-3261, 2011 WL 2680482, at *2 (E.D. La. Jul. 8, 2011) (citing *Hornbeck offshore (1984) Corporation v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993)). The *Ryan*

court analyzed controlling Fifth Circuit authority and summarized this comparison as follows:

> Broad arbitration clauses cover all disputes that arise under, relate to, or exist in connection with the underlying contract. If a clause is broad, the action should be stayed and the dispute should be settled in arbitration.
>
> Narrow clauses only control the arbitration of disputes that "arise out of" or "under" the agreement. When a clause is narrow, the courts must determine whether the agreement to arbitrate extends to the particular type of dispute in question. Unless the dispute falls within the reach of the arbitration agreement, a court should not stay the proceedings or refer the matter to arbitration. An arbitration clause that "arises out of" or "under" an agreement only covers disputes that relate to the interpretation and the performance of the contract itself.
>
> In determining whether an arbitration clause is broad or narrow, the Court must assess the language of the provision on its face, while taking care to consider the context in which that language arises. As the Fifth Circuit explained in [*Baudoin v. Mid-Louisiana Anesthesia Consultants, Inc.*, 306 Fed. Appx. 188, 192 (5th Cir. 2009)], the language of the arbitration clause should not be read in isolation, but rather in the context of the agreement and in a way that avoids an absurd result.

*Ryan*, 2011 WL 2680482, at *2-3 (citations omitted).

The arbitration clause in this case, which contains the language "any dispute under this agreement," is best characterized as a narrow arbitration clause. The clause does not contain any language indicative of a broad arbitration clause such as "relating to," or "in connection with" an agreement that would suggest the arbitration applies to a variety of extra-contractual claims. *See Pennzoil Exploration and*

10

*Production Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998); *Ryan*, 2011 WL 2680482, at *3; *Coffman v. Provost * Umphrey Law Firm, LLP*, 161 F. Supp. 2d 720, 725 (E. D. Tex. 2001). Rather, the arbitration clause at issue appears intended to cover only those disputes relating to the interpretation and performance of the Contract. It is, therefore, properly characterized as a narrow arbitration provision.

Without discussing whether the arbitration clause in the Contract is either broad or narrow, Defendants contend that Minute Med's specific claims of fraud in the inducement of a contract are nevertheless subject to arbitration. (Doc. 12 at p. 1.) To consider this issue, it is necessary to start with the Supreme Court's decision in *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967). The contract at issue in *Prima Paint* contained a broad arbitration clause providing for arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof." *Id.* at 398. The Supreme Court interpreted 9 U.S.C. § 4[1] of the FAA to mean that "if the claim is fraud in the inducement of the arbitration clause–an issue which goes to the 'making' of the agreement to arbitrate–the federal

---

[1] FAA § 4 provides in pertinent part that "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."

court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id.* at 403-404. In other words, FAA § 4 requires that allegations of fraud in the inducement of the entire contract must be decided by the arbitrator, and not the court. *Id.* at 404.

The Supreme Court has on two occasions clarified its holding in *Prima Paint*. *See Preston v. Ferrer*, 552 U.S. 346, 349 (2008); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006). While broad arbitration clauses were present in all three cases, the Supreme Court did not specifically address the distinction between a broad and narrow arbitration clause. The Supreme Court in *Preston* simply clarified "that, when parties agree to arbitrate disputes arising under their contract, questions concerning the validity of the entire contract are to be resolved by the arbitrator in the first instance, not by a federal or state court." *Preston*, 552 U.S. at 349. Nevertheless, several district courts have limited *Prima Paint's* holding to those cases which involve broad arbitration clauses. *RCM Technologies, Inc. v. Brignik Technology, Inc.*, 137 F. Supp. 2d 550, 554 (D. N. J. Mar. 19, 2001) (recognizing that "*Prima Paint* does not require arbitration of a fraudulent inducement claim where parties have specifically ruled out such a result by agreeing to a narrow arbitration clause"); *Carro v. Parade of Toys, Inc.*, 950 F.

12

Supp. 449, 453 (D. P.R. Dec. 23, 1996) (explaining that "[a] dispute involving allegations of fraud in the inducement of an entire contract do not 'arise under' the contract); *Michael Amoruso E Figli v. Fisheries Dev. Corp.*, 499 F. Supp. 1074, 1080 (S.D. N.Y. 1980) (recognizing that the holding in *Prima Paint* does not apply to a narrow arbitration clause which is "limited to differences or disputes 'arising out of this Agreement'").

A district court in the Eastern District of Louisiana recently examined a construction agreement containing the following arbitration clause: "[i]n the event any dispute arises out of this Agreement that cannot be resolved by the Parties, such dispute shall be submitted to final and bonding arbitration." *84 Lumber*, 2013 WL 3872217, at *1. After citing the Supreme Court decisions in *Prima Paint*, *Buckeye Check Cashing*, and *Preston*, the *84 Lumber* Court first determined that the plaintiff's claims challenging the validity of the contract should be decided by the arbitrator. *Id.* at *3-4. While the language of the arbitration clause suggests that it was a narrow one under Fifth Circuit precedent, the *84 Lumber* court made no specific findings as to whether the arbitration clause was either broad or narrow.

The Eastern District Court then considered whether plaintiff's contract and tort claims fell within the scope of the clause. *Id.* at 4. The *84 Lumber* court concluded that each claim fell within the scope of the arbitration clause in that: (1) the contract

13

claims undoubtedly could not be maintained without reference to the underlying agreement; and (2) the tort claims are also arbitrable as "'so interwoven with the contract that [they] could not stand alone.'" *Id.* (citing *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 250 (5th Cir. 1998)).

Upon emerging from this winding and somewhat opaque legal journey, the Court now turns to consider whether Minute Med's claims in this case fall within the scope of the Contract's arbitration clause. A review of *84 Lumber* and the Supreme Court cases cited therein seems to suggest that any comparison between a broad verses narrow arbitration clause may be a distinction without a difference when determining whether fraudulent inducement claims are arbitrable. Indeed, as clarified in *Preston* and followed in *84 Lumber*, the parties' agreement to arbitrate disputes "arising under the contract" means that questions as to the validity of the contract, including claims asserting fraud in the inducement of the entire contract, are to be decided by the arbitrator and not the courts. *See Preston*, 552 U.S. at 349; *84 Lumber*, 2013 WL 3872217, at *3.

Minute Med argues that another Supreme Court case, *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287 (2010) supports a finding that its fraudulent inducement claims do not fall within the ambit of a narrow arbitration clause. (Doc. 9 at p. 8.) In *Granite Rock*, the Supreme Court considered an arbitration clause

14

providing for arbitration of "all disputes under this agreement" and held that issues as the existence of a contract, or contract formation, are for the courts to decide rather than an arbitrator. *Id.* at 296, 307. *Granite Rock*, however, is inapplicable to this case as the fraudulent inducement claims at issue pertain to the validity of the entire Contract and not the existence or formation of the Contract. *See Vallejo v. Garda CL Southwest, Inc.*, No. H-12-0555, 2013 WL 391163, at *8 (S.D. Tex. Jan. 30, 2013). Accordingly, Minute Med's claims challenging the validity of the Contract based on fraudulent inducement appear to be arbitrable notwithstanding the presence of the Contract's narrow arbitration clause requiring "any dispute under this agreement" to be submitted to binding arbitration at Absolute MD's request.

Even assuming that a material distinction exists between a broad and narrow arbitration clause, the Court concludes that the fraudulent inducement claims sounding in tort remain arbitrable. A tort claim is arbitrable if it is "so interwoven with the contract that it could not stand alone, but is not arbitrable if it is completely independent of the contract and could be maintained without reference to the contract and could be maintained without reference to a contract." *Ford*, 141 F.3d at 250. "Arbitration is favored in the law, and parties to an arbitration agreement 'cannot avoid [that agreement] by casting their claims in tort, rather than in contract.'" *84 Lumber*, 2013 WL 3872217, at *4 (quoting *Grigson v. Creative Artists Agency*, 210

15

F.3d 524, 526 (5th Cir. 2000)). Furthermore, "a valid agreement to arbitrate applies 'unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Personal Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)).

Minute Med's fraudulent inducement claims are interwoven with the terms of the Contract, specifically Absolute MD's alleged failure to deliver and perform its many obligations under both the Contract and the attached Addendum A. For example, when attacking Absolute MD's pre-Contract representation as fraudulent that it would process insurance claims quickly, Minute Med refers to Absolute MD's breach of its obligation in the Contract where it had "agreed to make 'its best effort to process and transmit claims within (1) business day of receipt.'" (Doc. 1-2 at ¶¶ 59-60, p. 20.)

The Court finds that Minute Med's dispute with Defendants essentially arises as a result of their contractual relationship with each other, specifically Absolute MD's alleged failure to fulfill its contractual obligations. Minute Med's fraudulent inducement claims are, therefore, not independent from the Contract as they are intertwined with both the interpretation of and performance under the Contract. Accordingly, when factoring in that arbitration is favored in the law, the Court

concludes that Minute Med's fraudulent inducement claims should be subject to arbitration as a dispute under the Contract. *See RCM Technologies*, 137 F. Supp. 2d at 554-556 (holding that, despite conclusion that *Prima Paint* did not require arbitration of a fraudulent inducement claim under a narrow arbitration clause, the plaintiff's claims are nevertheless arbitrable because they "undoubtedly will require interpretation of the parties' agreement").

### *3. Does Any Federal Statute or Policy Render the Claims Nonarbitrable*

Lastly, the Court must consider "whether any federal statute or policy renders the claims nonarbitrable." *Primerica Life Insurance Co.*, 304 F.3d at 471. Minute Med has offered no argument or evidence to suggest that any legal constraints external to the Contract exist to foreclose the arbitration of Minute Med's claims. *See 84 Lumber*, 3872217, at *5 (citing *Fleetwood Enterprises*, 280 F.3d at 1073). Because Absolute MD seeks to exercise its option under the Contract to arbitrate Minute Med's fraudulent inducement claims, Absolute MD's Motion to Compel Arbitration (Doc. 5) should be granted.

### B.      *Motions to Dismiss or Stay this Proceeding*

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under the agreement in writing for such arbitration, the court in which such suit is pending,

> upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. While Section 3 directs the court to stay any arbitrable claim, the Fifth Circuit has recognized that a district court has discretion to dismiss a case with prejudice when all claims are subject to arbitration. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (explaining that a stay of the action would serve no purpose given the ruling that all issues raised therein are arbitrable and subject to arbitration); *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 311 n. 9 (5th Cir. 2003) (recognizing that *Alford* did not make it mandatory for a district court to dismiss a case when all of the claims are arbitrable).

In addition to the claims of fraudulent inducement of a contract, Minute Med has raised a state law unfair practices claim against Absolute MD under LUTPA. It is unclear whether Absolute MD contends that this claim is also subject to arbitration.[2] The undersigned, therefore, concludes in its discretion that his case should be stayed rather than dismissed because Absolute MD has moved for a stay of this action and it is unclear whether Absolute MD also seeks to arbitrate all claims

---

[2] At the conclusion of their reply brief, Defendants only refer to Minute Med's fraudulent inducement claim as being subject to arbitration. (Doc. 12 at p. 5.)

raised in the petition. *See Bailey v. Northrop Grumman Ship Systems, Inc.*, No. 08-4685, 2009 WL 1212475, at *2 (E.D. La. Apr. 28,2009).

## *IV. Conclusion*

Based on the foregoing reasons, the undersigned RECOMMENDS that Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. 5) be DENIED and that their Motion to Compel Arbitration and Motion to Stay Proceedings while this matter is referred to binding arbitration(Doc. 5) be **GRANTED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc.72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within FOURTEEN (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except

upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** at Lafayette, Louisiana, this 13th day of April, 2017.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE